STATE OF MISSISSIPPI, EX REL., *v.* W. D. HOLDER, AUDITOR OF PUBLIC ACCOUNTS.

1. CONSTITUTIONAL LAW. *Veto power.    Appropriations.    Const.* 1890, secs. 69, 73.    *Laws* 1898, *p.* 41.

  Section 73, constitution of 1890, providing that the governor may veto parts of any appropriation bill, relates to distinct appropriations contained in general appropriation bills and separable items of special appropriation bills, and does not authorize the veto of that part of a special appropriation bill in which is expressed, under section 69 of said constitution, the conditions on which the money may be drawn, and such veto is a nullity.

2. SAME.    *Void veto.    Adjournment of legislature.    Effect on bill.    Const.* 1890, *sec.* 72.

  Where the governor's action in approving a part and vetoing a part of a bill is void, and the legislature has adjourned within five days after the bill was sent to him for approval, it remains in his hands, in legal contemplation, and will become a law, under section 72, constitution of 1890, unless returned to the legislature disapproved within three days after the beginning of its next session.

FROM the circuit court, first district, of Hinds county.

HON. ROBERT POWELL, Judge.

The appellant, the state, *ex rel.*, was the plaintiff in the court below; appellee, Holder, auditor, was defendant there. Mandamus on the relation of the teachers and officers of the Industrial Institute and College to compel the auditor of public accounts to issue warrants for their salaries. The mandamus was denied and the relators appealed. The opinion states the case.

*Williamson & Potter*, for appellant.

The auditor takes the position (1) that this law is null and void, not having been constitutionally passed by the legislature and approved by the governor, and that he is without legal authority to issue a warrant on the treasury for the money appropriated for the support and maintenance of the college; (2)

that if it became a law at all, the whole act became a law, and the trustees have not complied with the conditions imposed and required before the warrant can be issued by him.

The petitioner insists (1) that the part of the bill approved by the governor became a law, and, all the conditions required having been complied with by the trustees, the auditor must issue the warrant; (2) that if the governor was not authorized by the constitution to veto that part of the bill disapproved, then his signature to it approved the whole bill, as passed by the senate and house, regardless of his futile effort to disapprove a part; but that the portion of the bill which the governor attempted, and for lack of authority failed, to veto, is unconstitutional and void, yet the valid and constitutional part of the act will remain, being complete in itself, and capable of execution in accordance with the main purpose and intent of the legislature, and the auditor must issue the warrant, as all the valid conditions of the law have been complied with by the trustees; (3) that if the governor was without constitutional authority to veto a part of the bill, and no part of it is unconstitutional and void, then the whole bill is a law, having been passed by both houses and signed by the governor. If this view be taken by the court, the writ will, of course, be denied, and the judgment of the lower court be affirmed, since the conditions imposed by the law have not all been complied with by the trustees.

The conditions can easily be complied with by the trustees should this court be of opinion that the whole bill became a law. Section 73 of the constitution provides that " the governor may veto parts of any appropriation bill, and approve parts of the same, and the portions approved shall be law." The language is not the governor may veto items and approve items, but that he may veto parts and approve parts of an appropriation bill. Nor is the language that the items approved shall become law, but it is that " the portions approved shall be law."

The appropriation to the Industrial Institute and College is

not in the list of the subjects directed by section 69 to be placed in the general appropriation bill, hence it had to be by a separate bill, which can embrace but one subject. It must contain no legislation except to prescribe for what purpose the money is to be paid and the conditions on which it may be drawn.

Now, a separate bill, like the one under review, may contain several items, provided all are embraced in the one subject and directed to a common purpose. But such a bill may contain only one item. The amount of money appropriated, and the purpose for which it is appropriated, are the only essential and inseparable parts of each and every item of an appropriation. It is difficult to conceive how an appropriation could be made without stating the purpose. Now, if there be but one item in an appropriation bill, it would contain only the amount fixed and the purpose, and there could be but one part to such a bill unless the legislature put to it a condition on which the money could be drawn. This would make two parts to the bill. Now, if the governor may veto part of any appropriation bill, he could, certainly, under the power granted by the broad language of section 73 of the constitution, veto the condition, and it would leave a law, complete in itself, capable of execution. So, if a bill contains sundry items, in which the purpose of each item is prescribed therein, all being directed to the accomplishment of the general purpose of the bill and within the scope of the subject embraced in the act, with sundry conditions on which the money may be drawn, the governor, under section 73 of the constitution, may veto any separate item or condition as part of such a bill, and approve the other parts, which will become law.

If the governor should veto such parts of a bill that the main purpose, intent, and object of the legislature in passing it were destroyed, this would be tantamount to a veto of the whole bill; but where the approved parts would leave it a law, complete in itself, capable of being executed, and its execution would not sub-

vert the main object, purpose and intent of the legislation, the portion approved by the governor would become law under our constitution, and the parts disapproved would be dead, unless revived and vitalized again by a passage in both houses with a two-thirds majority.

The object and purpose of the law is stated in the title, which is ''An act appropriating money for the support and maintenance of the Industrial Institute and College.''   From the title it would never be suspected that legislation on the subject of the government and control of the school, the regulation of its curriculum, and other cognate subjects, would be found in the body of the bill.   This is purely legislation independent of the part of the bill making the appropriation, and the one cannot be said to be so intimately associated that the two cannot be separated.   The main purpose of the bill and the intent of the legislature are not destroyed by striking out part of the bill which, in the form of a condition, undertook to compel the trustees of the college to transfer, through by-laws, to the president, powers which the law of the state vested in them solely, and to impose upon him duties which the law imperatively required of them.   In view of the purpose and object of the legislation, who can say that it is most probable that the legislature would not have passed the appropriation without the conditions which were vetoed by the governor?   But if it be held that the governor had no authority, under section 73, to·veto such a part of the bill, then, as to this bill, it was the governor's duty to have approved or disapproved *in toto*.   He approves by signing it; if he disapprove, he should not sign it, but send it back with his objections.   See sec. 72, constitution.

Now, when the governor signed his name to the bill, it became a law, regardless of his effort to explain that he disapproved a part of it.   He had no authority to disapprove a part.   All that the constitution requires to make a law was done when both houses passed the bill, and, on presentation to the governor, he affixed his name to it.   His effort to veto a part is null and void,

if section 73 did not give the authority.   "A bill is approved as a whole or disapproved as a whole.   The signature of the governor affixed to a bill is the evidence of his approval.   . . . It becomes immaterial what the governor may have done in the way of adding his objections to any part of the bill.   He exercised the full measure of his power, in respect to the bill, when he affixed his signature."   See *Porter* v. *Hughes, Auditor,* 32 Pac. Rep. (Ariz.), 165.

This bill, therefore, became a law as a whole, and is now the law, unless a part of it is unconstitutional.   We insist that that portion of the bill which the governor vetoed, or undertook to veto, is legislation, and is unconstitutional and void for two reasons, to wit: (1) Because section 69 of the constitution forbids the legislature to engraft such legislation upon an appropriation bill; (2) because the legislature had no authority to pass such legislation at a special session, the same not having been submitted to them by the governor for consideration while they were in session.   At a special session none but appropriation and revenue bills shall be considered, except such other matters as may be acted upon at an extraordinary session called by the governor. Sec. 36, const. Miss.   At an extraordinary session, only such subjects can be considered and acted on as may be embraced in the proclamation of the governor, or that the governor may submit, in writing, to them, while in session.   Sec. 121, const. Miss.   So that the jurisdiction of the legislature, at its special session, did not extend to any subject-matter of legislation except appropriation and revenue bills, unless the governor submitted it to them in writing while in session.   It is admitted that none of the subject-matters embraced in the act of February 11, 1898, were submitted to the legislature, in writing, by the governor, at the special session.   Over the subject-matter of appropriation of money for the support and maintenance of the college, the legislature, therefore, had jurisdiction at the special session, independent of any action or recommendation by the governor, but they had no constitutional authority to con-

sider or act upon any other legislation with reference to the college. The appropriation to the industrial institute and college was not in the list of subjects directed, by section 69, constitution, to be placed in the general appropriation bill, and, therefore, had to be made by a separate bill. Legislation could not be engrafted upon this bill by the legislature, and if it has been done, such engrafted legislation is not constitutional and is void. Legislation may not be engrafted upon appropriation bills at any time. It is forbidden by the constitution.

An examination of the act under consideration discloses the fact that the legislature fixed the amount of the appropriation, and prescribed the purposes for which the several sums should be paid, and prescribed, as conditions upon which the money may be drawn, the following: (1) Draft by the president; (2) approval of the draft by the governor and auditor; (3) issuance of warrant on treasurer of state by auditor; (4) the expenditure of all the money under the direction of, or with the approval of, the trustees; (5) a report of expenditures to the legislature. All of which could be done constitutionally, under the clause of section 69 which authorizes the legislature, in such a bill, "to prescribe the conditions on which money may be drawn, and for what purposes paid."

But the legislature did not stop within the constitutional limitations in this act. Under the guise of prescribing conditions under which money may be drawn, legislation is engrafted upon the bill—legislation which repeals, necessarily, the parts of the act of 1884 which conferred upon the trustees of the college the powers here given to the president. Sections 6 and 7 of the acts of 1884, page 52, confers upon the trustees the powers which the act under consideration attempts to take from them and vest in the president of the college. This is legislation pure and simple. It should be acted upon in a separate bill. In this bill such legislation is unconstitutional and void, for the two reasons stated above. This part of the act being void and unconstitutional does not vitiate the whole act, "for part of a

statute may be unconstitutional and void and the residue con-
stitutional and valid." See 23 Am. & Eng. Enc. L., p. 225,
note 4, and the authorities there cited; 36 Miss., 300; 6 How.
(Miss.), 625; 34 Miss., 227; 27 Miss., 209. "The test is not
whether the void and valid parts are contained in the same sec-
tion, for the distribution into sections is purely artificial, but
rather whether they are essentially and inseparably connected."
See 23 Am. & Eng. Enc. L., p. 226, note 1, and authorities
cited.

The void parts of this act are not so related or dependent on
the valid part of the law that the whole must fall. Strike from
the law that part which undertakes to compel the trustees to sur-
render the powers and duties imposed upon them by the law to
the president, still we have a complete law, capable of being
executed in strict accord with the main purpose and intent of
the legislature, to wit, the appropriation of money for the sup-
port and maintenance of the college. Surely it will not, for a
moment, be contended that there is anything apparent on the
face of the law to justify the assumption that a sensible and
patriotic legislature would not have made the appropriation to
support this institution, which is the pride of the women of the
state, if they had known they could not, constitutionally, have
provided for the exercise of certain powers by the president in-
stead of by the trustees. The requirement in the act that the
trustees, by adopting by-laws, should surrender to the president
the powers and duties imposed upon them by the law, is an
effort by the legislature, in this indirect way, to repeal a law.
The legislature cannot thus delegate to the trustees of the
college the power to repeal laws in this way. The legislature
itself must repeal the present law conferring the powers of gov-
ernment and control of the college upon the trustees, and con-
fer the powers upon the president. The legislature seemed con-
scious that such legislation could not be passed by them at a spe-
cial session, and sought, therefore, in this unconstitutional way,
to accomplish through the trustees what they could not do di-

rectly. The subject of the government and control of the college is separate and distinct from the appropriation, and when the attempted legislation on the subject of government and control is held void for unconstitutionality, the subject of appropriation is not so dependent upon it, nor so intimately associated with it in the bill, that the whole must fall. The valid part of the law should be upheld by the court.

*Frank Johnston*, for appellee.

The governor had no power, under section 73 of the constitution of the state, to veto any of the conditions of the act of the legislature making the appropriation for the Industrial Institute and College. It is true that the power is given to the governor, by the literal terms of this provision of the constitution, to veto parts of any appropriation bill and approve parts of the same, but this general language must, by construction, be limited and restricted to such parts of an appropriation bill as are separate, distinct and independent in themselves. The purpose of the framers of the constitution was to limit this power to the disapproval of a part of an appropriation bill, which was separable from the other portions of the bill, and not to vest in the governor the extraordinary, and, in a republican form of government, the unprecedented, power of creating a law by the exercise of the executive function of the veto. The veto power is, in a limited and restricted sense, a legislative power, but it is a destructive and not a creative function. It may forbid, but it cannot initiate or create legislation.

In the present instance, it is obvious that the governor, if his action is authorized by the constitution, has created a law as a substitute for the measure which was passed by the legislature. The legislature passed as a law an appropriation to this college, with certain clearly enumerated conditions upon which the money appropriated was to be drawn. The governor, as a substitute for this measure, has attempted to enact and put into effect an appropriation based on a part only of these conditions,

which is exclusively an executive measure, and which has never received the sanction or assent of the legislature.

If the power exists to veto one of the conditions, it necessarily extends to all of the provisions of an appropriation bill, and thus the executive of the state could convert, in all instances, by the exercise of the veto power, a conditional appropriation into an absolute and unconditional appropriation. It cannot be presumed that it was the purpose of the framers of the constitution to confer such an extraordinary, autocratic, and dangerous power upon the governor of the state. Unquestionably, the grant of such a power would never be raised by implication. Nothing less than the express grant of such a power, in the clearest and most unambiguous terms, could justify a construction of the constitution which would involve such a radical and fundamental change in the structure of the state government, as the conversion of the veto power from a negative into an affirmative and law-making function.

Instead, therefore, of construing section 73 of the constitution so as to change, radically and fundamentally, the entire character and functions of the veto power, the construction of this constitutional provision should be such as will preserve the distinctive character of this executive power, as a negative power on legislation, and confine its operation to the elimination of such parts of an appropriation bill as are distinct and independent in themselves, and which, when taken out of the statute, would leave the residue capable of enforcement, according to the intention and purpose of the legislature.

Thus, in a general appropriation bill, consisting of many items and various objects, the veto may be applied to any one separate and distinct item of an appropriation, and the conditions, if any, upon which it is made, without the disapproval of the entire bill. And this could be done also in a special appropriation bill, containing various items of appropriation, as in the case now before the court, where there is a separate item for repairs, capable of being separated from the other items of

appropriations without impairing the purpose of the legislature in making the appropriations conditional.   No new law would thus be created, and the residue of the bill would be capable of enforcement according to the intention of the legislature.   It is a fundamental principle of our form of government that all legislation must receive the approval of both branches of the legislature, as well as the approval of the governor.   It is apparent that this bill, as it came from the hands of the governor, has not received the approval of the legislature, and in no possible view can it be treated as valid or effectual, as thus changed by the action of the executive.

By the veto of the conditions, the entire bill has failed to become a law, and the part of the measure approved by the governor cannot be carried into effect, for the reason that, as the bill stands, it is essentially different from the measure passed by the legislature.   An analogy for this construction is furnished by the doctrine applicable to the power of the courts to pass upon the constitutionality of a statute.   This, like the veto, is purely a negative power, and not a creative function. The courts may declare a law unconstitutional, and thus destroy it, but they cannot create a law nor declare part of a law invalid, and put the residue into effect against the purpose and intent of the legislature.

The doctrine is well settled that when the parts of a statute are so mutually dependent and connected as conditions, considerations, or compensations for each other as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect, the legislature would not pass the residue independently, then if some parts are unconstitutional and void, all the provisions which are thus connected or dependent, must fall with them.   *Western Union Telegraph Co. v. State*, 62 Tex., 630; 3 Am. & Eng. Enc. L., 677, note 4; *State* v. *Tuttle*, 53 Wis., 45; *Isom* v. *Mississippi Central R. R. Co.*, 36 Miss., 300; *Campbell* v. *Union Bank*, 6 How. (Miss.), 625; *Brown* v. *Beatty*, 34 Miss., 227.

Upon the same principle, the governor may, under this provision of the constitution, eliminate by his veto any distinct and independent item of an appropriation bill, leaving the residue effectual and operative, provided the bill, as thus changed, has received the approval of the legislature, and is such a measure as would have passed the legislature in its altered form. But if the bill, as changed by the veto, is inconsistent with the purpose and intention of the legislature in passing the bill as a whole, the residue cannot be enforced or put into operation.

By disapproving the conditions of the appropriation, and approving the other parts of the bill, the governor has defeated the whole measure, for the residue left after eliminating the parts not approved cannot be enforced, for it has never received the sanction or approval of the legislature.

The bill cannot be enforced upon the theory of rejecting the executive disapproval of the conditions as a void act, and treating the governor's signature as an approval of the entire bill, for the reason that it is apparent from the indorsement made upon the bill, and which appears above the signature of the governor, that the executive approval was never given to these conditions. The court cannot treat this qualified approval of the bill as an approval of the entire measure, for this would, in effect, be an enactment of a law by the court and the legislature without the approval of the governor.

The only possible conclusion is, that the veto defeated the conditions, and as the appropriations are based on the conditions, the whole bill must fall. If this provision of section 73 of the constitution is to be construed or interpreted as conferring upon the governor the power claimed for him is this case, of substituting a measure of his own for the bill which passed the legislature, then, in the fullest sense of the term, the power of legislation has been conferred upon the executive department of the state government. Not the power to approve or disapprove an act of the legislature, which is, in a limited sense, a legislative

power, but the power and authority to initiate legislation. It may be seriously doubted whether the constitutional convention had the authority to confer such legislative power upon the governor of the state. The people of the states may amend or revise their constitutions, but this right is subject to the limitations imposed by the federal constitution, one of which requirements is, that a state cannot abolish a republican form of government. Cooley on Const. Lim., *33; Const. of U. S., art. 4, sec. 4.

One of the fundamental principles of our government is that the legislative power shall be separated from the judicial. Cooley on Const. Lim., *95.

In *Jeffries* v. *Lawson*, 47 Miss., 686, the court held that a constitutional convention could not exercise judicial powers, upon the fundamental principle of our republican form of government that the legislative, judicial and executive departments of the government, and the functions of each, are to be kept separate and distinct.

In *McNealey* v. *Gregory*, 13 Fla., 417, the court held that a provision of the Florida constitution granting new trials in cases where judgments had been rendered during the civil war was the exercise of a legislative function, and therefore invalid as impairing the obligation of contracts. But the court held further that if it was a judicial act it was void upon the ground that the convention had no judicial powers. Walcott, J., delivering the opinion of the court, said on this point: "This convention was called to frame a government republican in form, to delegate or distribute the powers of government to legislative, executive and judicial departments according to a recognized republican system."

With legislative power conferred upon the governor, even though limited to a special subject, there would be, to this extent, an autocratic and unrepublican form of government. With this construction, the provision of the constitution now under consideration might well be regarded as violative of the

federal constitution. At all events its validity would be placed, by such an interpretation, in the gravest doubt, and this is an urgent consideration why such an interpretation should not be given to this provision by the court.

The legislature clearly had the power, under section 69 of the constitution, to enact the conditions upon which the appropriations were made. The constitutional limitation on the power of the legislature is that legislation shall not be engrafted upon appropriation bills, but this provision of the constitution expressly declares that the legislature may prescribe the conditions upon which an appropriation is made. The purpose and intention obviously was to prevent ordinary legislation, not germane to the subject of the appropriation, from being engrafted upon an appropriation bill.

Prescribing conditions is necessarily legislating, and the conditions enacted upon which any appropriation is made constitute legislation. If, therefore, the legislature cannot legislate in respect to the terms and conditions upon which an appropriation is made, the absurd conclusion would follow that the legislature can only pass unconditional appropriation bills. Without the proviso to section 69 the legislature would clearly have the power to prescribe the terms and conditions upon which the public money is appropriated. Or else the *reductio ad absurdum* would follow that the legislature could only grant unconditional appropriations.

The argument of counsel for the appellant that the test of the power of the legislature is that it cannot prescribe conditions which would amend or conflict with pre-existing laws, is wholly unsound, for that would be placing the authority of an existing statute above the power of the legislature. The question is not whether the particular conditions upon which an appropriation is made repeals or amends a former statute, but whether the enactment of the conditions is the exercise of valid legislative power. In view of the express terms of the proviso to this provision of the constitution, the question is not debat-

able, and with or without the proviso the legislature clearly has
the power to prescribe the terms upon which the public moneys
are to be expended.   The conditions prescribed in the bill are
relevant to the subject of the appropriation, and their enact-
ment was clearly within the legislative power.   The history of
this measure, as shown by the proceedings of the investigating
committee of the house of representatives, explains the reasons
existing, in the judgment of the legislature, for the enactment
of the conditions upon which the appropriation was made.   If,
however, the contention of counsel for the appellant is correct,
that the legislature had no power to enact the conditions, then
the conditions are void, and, upon the familiar principle of
constitutional construction already stated, the whole bill is
invalid and inoperative.

The action of the governor is clearly unconstitutional and
should be treated as illegal and void, and the bill, which was
sent to the governor within five days of the adjournment of the
legislature, should be treated as an unsigned bill, under section
72 of the constitution.   In no possible view of the case can this
bill be treated as authority to the auditor for the issuance of
the warrants, and it is respectfully submitted that the judg-
ment of the lower court should be affirmed.

*Wells & Croom*, on the same side.

It will be seen, by the slightest examination of the record,
that a solution of the questions presented by this appeal requires
of the court an examination into the respective rights and duties
of the executive and legislative departments of the state govern-
ment, in the exercise of the veto power of the governor.   It is
of the deepest public concern, and of interest far beyond the
decision of this case, that the rights of each of these depart-
ments of the government should be absolutely protected from
the possible assaults of the other, and that neither branch of
the state government, under the guise of the performance of
its own peculiar functions, should be permitted to deprive the

other branch of its authority, as conferred upon it by the constitution.

By section 33 of the constitution, the legislative power of the state is vested in the senate and house of representatives. We insist that no such construction can be placed upon section 73 of the constitution as would enable the governor, by the exercise of the veto power, to put into force and effect as law an act which has never received the assent of the legislative department of the government. The constitutional convention was designed to build up, not to destroy; to protect, not to disorganize. Under the American system, if there is any one feature pre-eminently prominent, it is the distribution of powers into legislative, executive and judicial. Although a constitutional convention represents the sovereignty of the people, this sovereignty is subordinate to the constitution of the United States. With the adoption of the federal constitution, there was ordained a sacred and inviolable separation of legislative, executive and judicial authority. This principle is fundamental, and cannot be disregarded by a constitutional convention, any more than the legislative, executive or judicial departments of a government can exercise the powers of each other. When they do, their acts are void. The separation of the co-ordinate branches cannot be violated, even by a constitutional convention. 47 Miss., p. 686.

By section 72 of the constitution, it is provided that every bill which passes both houses shall be presented to the governor. If he approve, he shall sign it; but if he does not approve, he shall return it, with his objections, to the house in which it originated, which shall enter the objections at large upon its journal, and proceed to reconsider it. This is the full measure of the governor's authority under the constitution, as to the manner in which he may exercise the veto power. Section 72 also provides that if any bill shall not be returned by the governor within five days (Sunday excepted) after it has been presented to him, it shall become a law in like manner as

if he had signed it, unless the legislature, by adjournment, prevent its return, in which case it shall be a law unless sent back within three days after the beginning of the next session of the legislature.

The law of Mississippi, as announced in the case, *Ex parte Wren*, 63 Miss., 512, and also in the case, *Hunt* v. *Wright*, 70 Miss., 298, is that an enrolled act of the legislature, signed by the president of the senate and the speaker of the house of representatives and the governor, is the sole expositor of its own contents, and conclusive evidence of its existence according to its purport, and, also, that every act which bears on its face evidence of a disregard of the constitution, invites, and must receive, the condemnation of the courts, when they are called upon to deal with it.

The record here shows that the bill which is under consideration was passed by the house of representatives February 8, 1898, was passed by the senate February 9, 1898, and was presented to the governor prior to February 11, 1898, when he disapproved of the bill as presented, but signed the bill, after writing upon it his disapproval of some of the conditions, and sent the bill and lodged it with the secretary of state.

This action of the governor was taken under a misconception of the power vested in him by section 73 of the constitution, wherein it is provided: "The governor may veto parts of any appropriation bill and approve parts of the same, and the portions approved shall be law." If the act of the governor in signing the bill, together with his objections, and filing it with the secretary of state instead of returning it to the house in which it originated, amounted to a veto at all, it was an absolute veto of the bill, because it destroyed the legislative assent.

Under our constitution and form of government there is no way in which a law can be made operative which has not received the sanction of the legislative department. There are only two ways in which a bill may become a law without the express approval of the executive, viz.: (1) By receiving a two-

thirds vote of both houses, after it has been disapproved and returned by the governor; and (2) by the failure of the governor to return the bill to the house in which it originated, as provided by section 72 of the constitution.

Upon the face of the bill under consideration, although the governor's signature appears on it, and it is signed by the presiding officers of the two houses of the legislature, it is plain that the bill, as contended for by appellants, has never been adopted by the two houses. It appears to us that nothing can be plainer than that the bill which passed the legislature was not approved by the governor, and that the bill which was sent by the governor to the office of the secretary of state is not the bill which had been passed by the two houses.

It was not the design of the framers of our constitution to take away the authority to make laws from the representatives of the people in the legislature, nor to extend the veto power of the executive so as to enable the governor, by its exercise, to create a law which the legislature did not pass. It was the intention of the legislature, as it is plain to be seen from the terms of the bill, to make the appropriation available upon a condition that the trustees of the Industrial Institute and College should exercise their power of governing the institution, by the enactment of certain rules which were for the manifest good of the college. If section 73 of the constitution should be so interpreted as to empower the governor to veto the conditions upon which the appropriation is to become available, then the legislative power to make conditional appropriations will be destroyed. The governor will thus, by judicial interpretation, be invested with the new and dangerous power to veto the conditions upon which an appropriation may be drawn, and, by refusing to return the bill, with his objections, to the house in which it originated, the executive would be empowered to prevent the passage of the bill over his objections; to enforce the payment of a conditional appropriation unconditionally, and to put into operation as a law a scheme all his own, which has

never had, and could not get, the sanction of the legislature, which is declared by the constitution to be the source of legislative power in this state.   Such a dangerous power ought not to be put into the hands of the executive by judicial interpretation, if reasonable force and effect can be given to the constitutional provisions, and maintain the view that the executive and legislative departments of the government are still "distinct departments, each of them confided to a separate magistracy." 54 Miss., 396.

By section 36 of the constitution it is provided that at special sessions of the legislature appropriation bills may be passed without a recommendation from the governor, and this must necessarily be construed with reference to section 69, which provides that such bills "may prescribe the conditions on which the money may be drawn."   It is wholly unnecessary, under the exigencies of our state government, to invest the executive, by judicial interpretation, with any of the authority which is conferred by section 33 of the constitution, upon the legislature of the state.   The provisions of the act under review, as passed by the two houses, are so connected in subject-matter, and are such that they depend upon each other, and operate together for the same purpose, and are so connected together that it cannot be presumed that the legislature would have passed the act, with the conditions eliminated, and when it is observed that the trustees are required by the act to file with the auditor a certified copy of their action, complying with the conditions, as a precedent condition to the issuance of any warrant, it is only reasonable to conclude that the bill with the conditions stricken out, would not have been passed.   If the attempted veto of the governor was effective, he destroyed the legislative assent, and the act is not the law.   But the action of the governor was not performed in the manner in which the veto power must be exercised as prescribed by the constitution.   The new power conferred by section 73 to veto parts of any appropriation bill does not relieve the executive of the duty made mandatory upon

him by section 72 to exercise that power in a prescribed way. If he "does not approve, he shall return it with his objections to the house in which it originated," is the language of the constitution. Did the governor make the "return" required by the constitution? There can be no doubt of the meaning of the word, "return," used in section 72. As applied to the bill, it means the same as the word "presented," used in the same section. The bill must "be presented" to the governor of the state. Evidently must be turned over into his keeping in order that he may consider it, and approve or disapprove it. And so, when we come to consider the duty of the governor to "return" the bill if he disapprove it, we know, by observing that the house must enter the objections at large on the journal, and proceed to reconsider, not them, but "it," that the "return" must be made of the bill; that the bill must be returned from executive possession; that it must be placed in the possession, actual or potential, of the house in which it originated. It is as necessary for the legislature to have possession of the bill, in order to reconsider it, as it is that the bill should be presented to the governor, in order that he may approve or disapprove it. It is perfectly manifest that such a "presentation" of a bill to the executive, as does not give him control of it, made by the legislature, and such a "return" of a bill to the house in which it originated, made by the executive, as, that the house cannot reconsider the bill, do not in either case come up to the requirements of section 72 of the constitution.

It also appears that the bill in this case was not returned, with the governor's objections, to the house in which it originated, and that the executive gave no opportunity to reconsider the bill with his objections. Not having returned the bill, with his objections, to the house in which it originated, and the legislature having adjourned before the expiration of the five days allowed by the constitution, he might have retained it, and returned it with or without his approval within the the first three days of the next session of the legislature. In such case the

act would still be in the hands of the executive, and, in due course, might become the law or be defeated by the executive disapproval.    But the record shows that the governor signed the bill, after writing some objections on it, and lodged it with the secretary of state, and it remains for the court to say whether by that act the bill in its entirety became the law.    If this view is entertained by the court, there must be an affirmance in this case, as the petition shows on its face that all of the conditions have not been complied with, and, by the terms of the bill, the auditor is prohibited to issue the warrant until the trustees have filed a certified copy of their actions complying with all of the conditions.

We submit that any other view than one or the other of those above set forth would be, by judicial construction, to invest the executive with the hitherto unknown power of putting into force and effect a law all his own, and to confer upon the executive, which is a distinct and separate department of the government, a power which is, by the plain terms of the constitution, confided to another separate and distinct department—a co-ordinate department, invested by the constitution with the legislative power.

Argued orally by *C. M. Williamson* and *W. R. Harper*, for the appellant, and by *Frank Johnston* and *Ben H. Wells*, for the appellee.

WOODS, C. J., delivered the opinion of the court.

The most difficult and delicate duty that ever falls to the lot of the court of last resort is ours to-day.    In interpreting various provisions of our constitution, we are called upon to declare the boundaries beyond which executive action may not pass, and to fix the limitations upon the executive authority to veto the declared will of both houses of the legislature.

On the eighth day of February, 1898, the following bill was passed by the house of representatives, viz.:

76 Miss.—12c

AN ACT to appropriate money for the support and maintenance of the industrial institute and college for the years 1898 and 1899.

"SECTION 1. *Be it enacted by the Legislature of the State of Mississippi*, That the following sums of money be, and the same are hereby, appropriated out of any money in the treasury not otherwise appropriated, for the support and maintenance of the industrial institute and college: For salaries of teachers and officers for the year 1898, $20,490; for the year 1899, $20,490; for extending sewer, $1,600; for painting building and repairs, $1,000; trustees' meetings, commencement exercises, printing, etc., $800.

"All of said amounts to be drawn by draft of the president of the college, approved by the governor and the auditor of public accounts, and the auditor shall issue his warrant on the state treasurer for said several sums; *Provided*, That no part of the money hereby appropriated for wages or salaries shall be available unless the board of trustees shall first adopt and enact rules and by-laws to the following effect: (1) Conferring upon the president of the college the power to recommend to the board of trustees all the teachers who may hereafter be employed, and to select and remove other employes who are not teachers, and giving the president the authority, for sufficient cause, in his discretion to remove or suspend any member of the faculty subject to the approval of the trustees. (2) Conferring upon the president of the college the authority, subject to the approval of the trustees, to arrange and specify the course of study and to fix the schedules of studies and classes, and to establish rules of discipline for the government of the pupils. (3) By-laws providing for equal dormitory privileges to all pupils, whether taking industrial or academic courses, singly or together, and by-laws to enforce the faithful discharge of duties of all officers, professors or employes, and before the auditor shall issue any warrant under this act the board of trustees shall file with the auditor a certified copy of their action complying with the above conditions. All of said

money to be expended under the direction or approval of the
trustees of the college and a report of the expenditures made
to the legislature.''                                                          .

This bill passed the senate February 9, 1898, and was duly
presented to the governor for his action.   On February 11,
1898, the governor made this indorsement and qualified
approval upon the bill, in words following, and thereafter, on
the same day, caused the same to be filed in the office of the
secretary of state, viz.:

'' I approve that part of this bill preceding the word ' pro-
vided ' in the first section, and I approve the suggestion in said
section that by-laws provide for equal dormitory privileges to
all pupils, whether taking industrial or academic courses,
singly or together, and I approve that part of said section pro-
viding for the expenditures of said money under the direction
or approval of the trustees, and for report thereof to the legis-
lature, and I approve section 2.   The other parts, by authority
of section 73 of the state constitution, I disapprove.

'' 10:45 A.M., February 11, 1898.''

The sections of the constitution necessary to be at all con-
sidered are sections 69, 72, and 73, and they are as follows,
respectively, viz.:

'' Sec. 69.  General appropriation bills shall contain only the
appropriations to defray the ordinary expenses of the executive,
legislative and judicial departments of the government; to pay
interest on state bonds and to support the common schools.
All other appropriations shall be made by separate bills, each
embracing but one subject.   Legislation shall not be engrafted
on appropriation bills, but the same may prescribe the condi-
tions on which the money may be drawn, and for what purposes
paid.''

'' Sec. 72.  Every bill which shall pass both houses shall be
presented to the governor of the state.   If he approve he shall
sign it; but if he does not approve, he shall return it, with his
objections, to the house in which it originated, which shall

enter the objections at large upon its journal and proceed to reconsider it. If, after such reconsideration, two-thirds of that house shall agree to pass the bill, it shall be sent, with the objections, to the other house, by which likewise it shall be reconsidered, and, if approved by two-thirds of that house, it shall become a law; but in all such cases the votes of both houses shall be determined by yeas and nays, and the names of persons voting for or against the bill shall be entered on the journal of each house respectively. If any bill shall not be returned by the governor within five days (Sundays excepted) after it has been presented to him, it shall become a law in like manner as if he had signed it, unless the legislature, by adjournment, prevent its return, in which case it shall be a law unless sent back within three days after the beginning of the next session of the legislature. No bill shall be approved when the legislature is not in session.

"Sec. 73. The governor may veto parts of any appropriation bill, and approve parts of the same, and the portions approved shall be law."

Section 73 of the constitution relates to general appropriation bills, or those containing several items of distinct appropriations—that is to say, special appropriation bills, with distinct items of appropriation. It applies to such as are made up of parts and consists of portions separable from each other as appropriations. It was not designed to enable the governor to veto objectionable legislation in appropriation bills, for that is provided for in section 69. Section 73 was framed with a view of guarding against the evils of omnibus appropriation bills, securing unrighteous support from diverse interests, and to enable the governor to approve and make law some appropriations, and to put others to the test of securing a two-thirds vote of the legislature as the condition of becoming law. Thus viewed, section 73 is eminently wise, and will prove useful in practice as corrective of an evil, but if a single bill, making one whole of its constituent parts, "fitly joined together,"

and all necessary in legislative contemplation, may be dissevered by the governor, and certain parts torn from their connection may be approved, and thereby become law, while the other parts, unable to secure a two-thirds vote in both houses, will not be law, we shall have a condition of things never contemplated, and appalling in its possible consequences.

Every bill of the character in question has three essential parts: The purpose of the bill, the sum appropriated for the purpose, and the conditions upon which the appropriation shall become available. Suppose a bill to create a reformatory for juvenile offenders, or to build the capitol, containing all necessary provisions as to purpose, amount of appropriation and conditions, may the governor approve and make law of the appropriation and veto and defeat the purpose or the conditions, or both, whereby the legislative will would be frustrated, unless the vetoed purposes or conditions were passed by a two-thirds vote of both houses? This would be monstrous. The executive action alone would make that law which had never received the legislative assent. And after all and despite the pragmatic utterances of political doctrinaires, the executive, in every republican form of government, has only a qualified and destructive legislative function and never creative legislative power. If the governor may select, dissect, and dissever, where is the limit of his right? Must it be a sentence or a clause, or a word? Must it be a section, or any part of a section, that may meet with executive disapprobation? May the governor transform a conditional or a contingent appropriation into an absolute one in disregard and defiance of the legislative will? That would be the enactment of law by executive authority without the concurrence of the legislative will and in the face of it. The true meaning of section 73 is that an appropriation bill made up of several parts—that is, distinct appropriations, different, separable, each complete without the others, which may be taken from the bill without affecting the others, which may be separated into different parts complete

in themselves—may be approved and become law in accordance with the legislative will, while others of like character may be disapproved and put before the legislature again, dissociated from the other appropriations.   To allow a single bill entire, inseparable, relating to one thing, containing several provisions, all complementary of each other and constituting one whole, to be picked to pieces and some of the pieces approved and others vetoed, is to divide the indivisible, to make one of several, to distort and pervert legislative action, and, by veto, make a two-thirds vote necessary to preserve what a majority passed allowable as to the entire bill, but inapplicable to a unit composed of divers complementary parts, the whole passed because of each.

The bill in question is an entire thing, inseparable in its provisions and to be approved or disapproved as such, and not having been signed as a whole, was not made law by the partial and qualified approval which it received.   It cannot be law, for that would be to make law of what has not been concurred in by the legislature and the governor.

Section 69 of the constitution does not forbid all legislation in appropriation bills.   It prohibits general, foreign and incongruous legislation, but distinctly authorizes legislation prescribing conditions on which money appropriated may be paid out. Restricting the prohibition of section 69 and the provision of section 73 to general appropriation bills, or bills containing distinct and separable items of appropriation, all difficulty is removed, harmony is established, and the several provisions made intelligible and useful.

The idea of section 73 was probably borrowed from the constitution of the Confederate States, where plainly different appropriations were had in view, and it seems irrational to apply it to other and different appropriations.   If section 72, which requires bills vetoed by the governor to be returned to the house in which they originated, does not apply to bills parts of which are approved and parts disapproved under section 73,

our interpretation of these sections is powerfully strengthened. It is by section 72, if at all (as to which we are required to say nothing), that the parts vetoed are to be submitted to the legislature. Section 72 speaks of a bill in its entirety, it appears, and may not be applicable to the state of case contemplated by section 73. If the vetoed parts of a bill are not required to be submitted to the legislature (as to which we express no opinion), then the governor's approval of parts of a bill, and his disapproval of other parts, may make that law which the legislative will never sanctioned, and which, by a two-thirds vote of both houses, the proper law-making power was ineffective to prevent becoming law.

The signing of the bill by the governor was qualified in the act and on the enrolled bill, and did not become law, in part, because it was not an approval of parts and disapproval of parts of such a bill as is in view in section 73 of the constitution, the bill in this case, in the parts vetoed, not being an appropriation bill within its meaning, and not being a veto of parts of distinct and separable appropriations. To hold that the bill became law as a whole would be to make it so without the governor's approval, and in the face of his disapproval of the conditions. Both legislative declaration and executive approval are essential prerequisites to the enactment of any law.

The action of the governor having been unconstitutional, and therefore void, his action in dealing with the bill was a nullity, but, the legislature having adjourned within five days after the presentation of the bill to the governor, the bill, in legal contemplation, must be held to be yet in the hands of the governor, and may become law unless sent back by him within three days after the beginning of the next session of the legislature. It follows from these views that the judgment of the court below must be

*Affirmed.*

TERRÁL, J., dissenting.

The act of the legislature of 1884, creating and establishing the Industrial Institute and College for the education of white

girls, vested in the board of trustees thereof certain powers for the government and control of said institution; the appropriation bill for said Industrial Institute and College, passed on February 11, 1898, enacted that the sums of money for the payment of the salaries of the teachers and officers of said college should not be audited until the trustees of said college should enact by-laws granting said powers of government, or a large part of them, to the president of the college. The governor approved the appropriations of the bill, but vetoed those parts of the bill which required the trustees to enact by-laws vesting their own powers in the president of the college. An application for the warrant of the auditor for the salaries of the teachers and officers of the college has been made upon the auditor, and he refuses to audit said claim because of the want of the certificate of said board of trustees that they have enacted by-laws in compliance with the parts of the appropriation bill vetoed by the governor.

Upon this statement of the case, the question is whether the teachers and officers of the college, who have earned their respective salaries, and have furnished proper vouchers therefor, are entitled to a warrant or warrants for such salaries. Section 69 of the constitution provides: "Legislation shall not be engrafted on appropriation bills, but the same may prescribe the conditions on which the money may be drawn, and for what purpose paid." Section 73 provides: "The governor may veto parts of an appropriation bill, and approve parts of the same, and the parts approved shall be law."

If the proviso of this bill be mere legislation, it must have been void, without the governor's veto, by the force of section 69 of the constitution, otherwise the clause, that "legislation shall not be engrafted on appropriation bills," would be nugatory and of no effect. Whether the proviso in the act before us, by the mere use of the word "provided," makes the subject-matter of the proviso a condition within the meaning of that term as used in section 69, and so subject to legislative imposi-

tion upon an appropriation bill, depends upon the meaning of the phrase, "may prescribe the conditions on which the money may be drawn." I think it evident that the proviso in this bill is not a condition, within the meaning of section 69. The clause, "may prescribe the condition under which the money may be drawn, and for what purpose paid," has reference, in my judgment, to satisfactory proofs of the legality of the claims presented for payment, and to the security of the vouchers offered therefor.

It is a principle of law in this state that no person, for any service however great and meritorious, can have a claim upon the public treasury, unless such claim be expressly provided for by statute, nor will it be allowed until the prescribed proof of it be presented to the court or the auditing officer. I think any provision of an appropriation bill which is intended to secure the payment of the claim only to the persons entitled thereto, and only on proof of the validity of such claim, and providing a voucher for the payment, would be conditions within the purview of section 69, and so inseparably connected with the appropriation itself that a veto of the conditions would destroy the whole bill. And I am content to believe that such are the conditions contemplated in section 69, for, if the meaning of it be stretched to include the vetoed parts of this appropriation bill, it is apparent that there is a repugnancy between the quoted clauses which renders them self-destructive. I look upon the vetoed parts of this bill as mere legislation, and as being therefore void, or, if not *ipso facto* void, nullified by the veto of the governor.

The legislation which may not be engrafted on appropriation bills appears to me to be any matter not germane to such bills, nor designed to effect the purpose of having the money reach the person entitled to it: that the purposes to be accomplished by the vetoed parts of the bill is mere legislation is apparent. The powers and authorities, required by the vetoed parts of this appropriation bill to be conferred by the trustees upon the

president of the college, were vested in these trustees by the legislative act of 1884, and nothing of less force than a legislative act can divest them out of such trustees and vest them in the president of the college.   It was not competent for the legislature, at its special session, to amend or alter the act of 1884, establishing the Industrial Institute and College, and it is evident that the legislature could not confer power on the board of trustees of the college to do what itself could not do.   I am firmly impressed that the governor has only exercised, in this matter, a constitutional prerogative, and if the college needs amendatory laws, it must wait with others for the time fixed by the constitution for their enactment.   Section 73 of the constitution is wisely intended to prevent the evils of forcing legislation upon the country which could not be passed in the ordinary way, by tacking provisos to effect such purposes upon appropriation bills, and its beneficent purposes should be cherished and secured.

I am of opinion that the teachers and officers of the college, upon the case made, are entitled to the relief sought at the hands of the court.