Governor Kirk Fordice of Mississippi appealed from a summary judgment decision in favor of the plaintiff legislators and Attorney General Mike Moore in the Chancery Court of the First Judicial District of Hinds County. Governor Fordice argued on appeal that he was properly exercising his partial veto power under Section 73 of the Mississippi Constitution. We disagree and affirm the Chancellor's decision, noting the following:
 The most difficult and delicate duty that ever falls to the lot of the court of last resort is ours to-day. In interpreting various provisions of our constitution, we are called upon to declare the boundaries beyond which executive action may not pass, and to fix the limitations upon the executive authority to veto the declared will of both houses of the legislature.
 State v. Holder, 76 Miss. 158, 23 So. 643 (1898).
 I.
On August 6, 1993, three State Legislators filed a complaint in the First Judicial District of the Hinds County Chancery Court seeking a judgment declaring that the Governor's actions vetoing parts, allowing parts, and amending parts of twenty-nine legislative bills were not authorized by the Mississippi Constitution of 1890 and were a nullity. Attorney General Mike Moore intervened as a party plaintiff on behalf of the people of the State of Mississippi. The case was heard on the merits on the legislator plaintiff's motion for judgment on the pleadings and the Governor's motion for the same relief, or in the alternative, summary judgment. The chancellor, finding the Governor's partial vetoes of those bills invalid, granted summary judgment in favor of the plaintiffs and declared invalid the partial vetos of House Bills 1502, 1613, 1543, 1549, 1550, 1552, 1553, 1557, 1567, 1573, 1577, 1580, 1582, 1587, and Senate Bills 3052, 3054, 3056, 3057, 3060, 3062, 3063, 3066, 3070, 3077, 3085, 3101, 3102 and 3110.
From this judgment, the governor appeals.
 II. FACTS
This action involves bills presented by the 1993 Legislature to the Governor within five days of adjournment sine die of the legislative session on April 4, 1993. The Governor returned the bills to the legislature within fifteen days with a message that he had vetoed parts of twenty-nine bills.
The 1993 Legislature passed House Bill 1613 which authorized the borrowing of $65,882,979 through the issuance of general obligation bonds of the state to finance capital improvements at the state institutions of higher learning and community and junior colleges. The Governor marked through most of the projects listed in the bill, inserted his own lower figure of $8,306,979 and signed the bill "subject to partial veto."
House Bill 1502 passed by the 1993 Legislature authorized the borrowing of $8,000,000 through the issuance of general obligation bonds to finance the acquisition and development of historic properties in the state. The Governor vetoed six of the projects in House *Page 1000 
Bill 1502. He also struck sections of that bill detailing how expenditures of the appropriated funds could be made for the projects he vetoed. The Governor struck through the $8,000,000 figure, inserted his own figure of $5,150,000 and signed the bill "subject to partial veto."
Twenty-seven appropriation bills passed by the 1993 Legislature were also modified by the Governor. House Bill 1576 appropriated funds for the state institutions of higher learning for the 1994 fiscal year. Section 17 of that bill forbade the use of any funds appropriated by the bill to raise the salary of the Commissioner of Higher Learning. The Governor crossed through the section and signed the bill.
The other twenty-six bills appropriated funds for particular state government agencies and departments to hire a certain number of employees. In each of these bills, the Governor marked through the number of employees authorized and substituted a smaller figure.
 III. GOVERNOR'S VETO POWER
Article IV, § 73 of the Mississippi Constitution of 1890 states: "The governor may veto parts of any appropriation bill,
and approve parts of the same, and the portions approved shall be law." Miss. Const. art. IV, § 73 (emphasis added). Therefore, the Governor is entitled to exercise his § 73 veto power upon "parts" of "appropriation" bills, and only upon "parts" of "appropriation" bills. The Governor may not exercise the § 73 partial veto power on revenue raising bond bills. Naturally the question then arises as to what constitutes a bond bill and what constitutes an appropriation bill.
Article 4, § 63 of the Mississippi Constitution of 1890 provides:
 No appropriation bill shall be passed by the legislature which does not fix definitely the maximum sum thereby authorized to be drawn from the treasury.
Article 4, § 64 of the Mississippi Constitution of 1890 provides in part:
 No bill passed after the adoption of this Constitution to make appropriations of money out of the state treasury shall continue in force more than two months after the expiration of the fiscal year ending after the meeting of the legislature at its next regular session; . . .
Article 4, § 69 of the Mississippi Constitution of 1890 provides:
 General appropriation bills shall contain only the appropriations to defray the ordinary expenses of the executive, legislative, and judicial departments of the government; to pay interest on state bonds, and to support the common schools. All other appropriations shall be made by separate bills, each embracing but one subject. Legislation shall not be engrafted on the appropriation bills, but the same may prescribe the conditions on which the money may be drawn, and for what purposes paid.
This case turns on whether House Bills 1613 and 1502 are "appropriation bills" within the meaning of Article IV, § 73 of the Mississippi Constitution of 1890. Whether a legislative enactment authorizing the issuance of bonds to provide for certain specified capital improvement projects is an appropriation bill was discussed in Colbert v. State, 86 Miss. 769, 39 So. 65 (1905). In making this determination, the Court looked to §§ 63, 64, 69, and 73 of the Mississippi Constitution of 1890. The Court held: "The creation of a debt is an entirely different thing from an appropriation for its payment." Id., 39 So. at 67.
The application of the respective Mississippi constitutional provisions leads to the conclusion that House Bills 1613 and 1502 were not appropriation bills within their intended meaning, and instead were a creation of debt. In order for the bills to be susceptible to the Governor's § 73 partial veto power, they must fix a definite maximum amount, § 63, and not continue to be in force withdrawing money from the state treasury longer than two months after the expiration of the fiscal year ending after the meeting of the legislature at its next regular session, § 64. This Court finds that the House bills in dispute do not meet the requirements of § 63 or § 64 for the following reasons. *Page 1001 
At the time of passage of bills authorizing the issuance of bonds, no one knows when the bonds will be sold, what the interest rate on these bonds will be, or when the bonds will mature. For that reason, no bill authorizing the issuance of bonds can contain a definite maximum sum to be paid by the treasury; such a bill fails to meet the constitutional requirement of § 63.
The short expiration period imposed on appropriation bills by § 64 is a characteristic not shared by bond bills. Under § 64, all appropriation bills adopted by the 1993 Legislature expired at the end of August 1994. Most bond bills involve a financing transaction that is not complete until twenty or thirty years after issuance when the bonds are redeemed; such bond bills failed to meet the constitutional requirement of § 64.
We look to the legislative intent behind a statute when interpreting its language and as a general rule we will not look behind the completed acts of the legislature on a constitutionally passed bill. Hunt v. Wright, 11 So. 608, 609,70 Miss. 298, 304 (1892). Today we do not disturb our holding inHunt, but rather, follow our normal procedure of looking to the legislative intent when interpreting language of the law. Upon review, it appears that such intent was reflected in the voting history of House bills 1613 and 1502. A revenue bill must be passed by "at least three-fifths vote of the members of each house present and voting." Miss. Const. art. 4, § 70. The House Journal reflected that sixty-nine out of one hundred fifteen votes, (exactly three-fifths), was needed for passage of these bills. Therefore, the legislative intent appears to have been to make these revenue bills, i.e. "bond bills," and not appropriation bills.
It is argued that these bills are both revenue bills and appropriations bills and that the allocation of the bond proceeds to specific projects and the direction to pay interest and principal as and when due out of funds not otherwise appropriated are, in effect, appropriations subject to veto. Assuming arguendo, that this is true, the vetos here in question went beyond the "appropriations" portions of the bills. The governor, by striking the amounts and inserting in lieu thereof his own reduced amount of bonded indebtedness authorized to be incurred, affected the bond portion of these bills in a partial rather than a complete manner, and such action is inconsistent with § 72 and § 73 of our constitution.
This Court finds that House Bills 1613 and 1502 were not appropriation bills within the meaning of the Constitution. Article IV, § 73 of the Mississippi Constitution of 1890 authorizes the Governor to veto parts of "appropriation bills." Moreover to the extent that these bills contain appropriation attributes, the governor's veto went well beyond those attributes and affected provisions which clearly did not appropriate. As these bills were not appropriation bills, his partial vetoes of these bills were unconstitutional. A Governor's unconstitutional attempt of a partial veto is a nullity. See State v. Holder,76 Miss. 158, 23 So. 643 (1898). Accordingly, House Bills 1502 and 1613 became law.
The trial court ruled against the Governor on the twenty-seven appropriations bills. On appeal, the Governor raised as error the trial court's ruling regarding these bills in his Statement Of Issues On Appeal and made such bills part of the record for our review in his Designation Of The Record filed with the court. Nevertheless, he did not raise any issues concerning these bills in his brief contending they would be moot by the time this case was decided since such partially vetoed appropriations were for the fiscal year 1994 ending June 30, 1994. However, public policy and the magnitude of the importance of these issues requires this Court to review the Governor's actions with respect to the twenty-seven appropriations bills as such actions may continue to be repeated and forever escape review by this Court.[1] *Page 1002 
We expressly adopted the doctrine of `capable of repetition yet evading review' as an exception to the mootness doctrine inStrong v. Bostick, 420 So.2d 1356, 1359 (Miss. 1982). The elements for meeting this exception are (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subject to the same action again. Id. at 1359; citing Weinstein v.Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, 353 (1975). While we have the unusual case of an appellant rather than the appellee urging that we not reach an issue, these principles should nevertheless obtain. The entire judgment was appealed and became the property of this Court. The failure of the governor to brief the issue may be treated as a confession of error but we are not compelled to do so or to ignore the issue. We find the exception to the mootness doctrine applicable in the case sub judice.
The other twenty-seven bills which were partially vetoed were appropriation bills as designated by the legislature itself. In,State v. Holder, 76 Miss. 158, 23 So. 643 (1898), this court disapproved a veto of a condition prescribed by the legislature limiting the purpose for which the money may be paid pursuant to the power vested in the legislature by § 69 of the constitution. That opinion provides the clearest understanding of how § 73 may be properly exercised by the Governor of Mississippi:
 Every bill of the character in question has three essential parts: The purpose of the bill, the sum appropriated for the purpose, and the conditions upon which the appropriation shall become available. . . . The true meaning of section 73 is that an appropriation bill made up of several parts (that is distinct appropriations), different, separable, each complete without the other, which may be taken from the bill without affecting the others, which may be separated into different parts complete in themselves, may be approved, and become law in accordance with the legislative will, while others of like character may be disapproved, and put before the legislature again, disassociated from the other appropriations.
Id., 23 So. at 645.
The Court finds that the Governor's exercise of the partial veto pursuant to § 73 upon the twenty-seven appropriation bills was not that provision as interpreted by Holder. Here, as there, the governor sought to veto a condition prescribed by the legislature rather than a distinct appropriation.
The legislature's and the governor's power are not unlimited. The Governor is a check upon the spending power of the legislature within our established system of checks and balances. Therefore, the legislature may spend as it sees best just as the Governor may veto bills under § 73 and § 72 as he sees best, but both must still operate within the constitutional parameters established by the drafters of our constitution.
We do not hold today that the Governor's veto power under § 73 is without substance. Rather, we hold that the manner in which it was used and the applicability of this power to the House bills in question was not proper and in accordance with the constitutional requirements. The Governor had and yet possesses the power to veto "parts" of "appropriation" bills under § 73.
 IV. GUBERNATORIAL IMMUNITY
Governor Fordice alleged that he was immune from judicial review when exercising his veto power. We disagree finding that to hold such a position in this state would disrupt our entire established system of checks and balances in government. To do so would be to give an unbridled reign of power to a branch of government that would answer to no one. Sound jurisprudence and our constitution dictate that we cannot allow this to happen in Mississippi.
Several states have rejected attempts by a governor to avoid judicial review of the manner in which he exercised his veto power. In State ex rel. Sego v. Kirkpatrick, 86 N.M. 359, *Page 1003 524 P.2d 975 (1974), the Supreme Court of New Mexico stated:
 We fully agree that the exercise of the veto power requires judgment and discretion on the part of the Governor and that he cannot be compelled by the Legislature or by this Court to exercise this power or to exercise it in a particular manner. We do not agree, however, that the manner in which the Governor exercises the power is beyond judicial review or judicial control, if the manner in which it is exercised is beyond the Governor's constitutional authority. The power of veto, like all other powers constitutionally conferred upon a governmental officer or agency, is not absolute and may not be exercised without any restraint or limitation whatsoever. The very concept of such absolute and unrestrained power is inconsistent with the concept of "checks and balances," which is basic to the form and structure of State government created by the people of New Mexico in their constitution, and is inconsistent with the fundamental principle that under our system of government no man is completely above the law.
We find the logic in State ex rel. Sego v. Kirkpatrick, to be sound and illustrative of the manner by which government is to be conducted, and we hold that the Governor is not immune from suit in exercising his veto powers and not beyond judicial review by this Court. Nevertheless, we will not question his judgment in lawfully exercising his veto power, but we must be available to adjudicate the question whether the manner of its exercise exceeds constitutional parameters.
Governor Fordice additionally alleged that he was immune from suit because the legislator plaintiffs lacked standing. We disagree.
Under article III, § 2 of the United States Constitution, the federal courts limit review to actual "cases and controversies." Such restrictive language is not found in the Mississippi Constitution. "Therefore, we have been more permissive in granting standing to parties who seek review of governmental actions." Van Slyke v. Board of Trustees, 613 So.2d 872, 875 (Miss. 1993). We have ruled that parties have standing to:
 sue or intervene when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law.
State ex rel. Moore v. Molpus, 578 So.2d 624, 632 (Miss. 1991).
In an action between state legislators and the Governor, this Court has addressed the usurpation of executive authority by the legislative branch in Alexander v. State By and Through Allain,441 So.2d 1329 (Miss. 1983). We stated:
 The executive, legislative and judicial departments of the state all serve the same constituency and are, of course, subject to and bound by the terms of the same state constitution. The interpretation of the constitution becomes the duty of the judicial department when the meaning of that supreme document is put in issue.
Id. at 1333.
In the case sub judice, Bryan, Endris and Horhn, as legislators and taxpayers, had standing to bring suit since they asserted a colorable interest in the litigation. Individual legislators had standing to bring the instant action under well established case law. See Van Slyke v. Board of Trustees,613 So.2d 872, 875 (Miss. 1993); Board of Trustees v. Van Slyke,510 So.2d 490 (Miss. 1987); Dye v. Hale, 507 So.2d 332 (Miss. 1987); See State ex rel. Moore v. Molpus, 578 So.2d 624 (Miss. 1991). Their votes on these bills were adversely affected by the Governor's vetoes. The Attorney General had standing in his official capacity to intervene in this suit on behalf of the State. See State ex rel. Moore v. Molpus, 578 So.2d at 632.
 V. CONCLUSION
The issues herein are of considerable constitutional importance to the executive and legislative branches of government, as well as to all citizens and taxpayers of Mississippi.
This Court, as the third branch, recognizes that the other two branches, both strong and *Page 1004 
independently minded, were and are motivated by the best of intentions and good faith as each performs necessary acts of governance.
For those necessary acts of governance to continue, disputes involving separation of powers must be resolved as they arise, and the resolution of this particular dispute is consistent with sound jurisprudence and the established law of this State.
Mindful of the quote from Holder, supra, on the first page of this opinion, and cognizant that now unknown disputes of governance shall, undoubtedly, present themselves for future resolution, the Court notes that our government endures within a framework of constitutionally balanced separation of powers, but permits and encourages aggressive, but lawful, interaction amongst its branches.
AFFIRMED.
SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
HAWKINS, C.J., concurs in part and dissents in part with separate written opinion joined by PRATHER, P.J., and in part by DAN M. LEE, P.J., and SMITH, J.
DAN M. LEE, P.J., concurs in part and dissents in part with separate written opinion joined in part by SMITH, J.
McRAE, J., concurs with separate written opinion.
SMITH, J., dissents with separate written opinion joined in part by DAN M. LEE, P.J.
[1] "Perhaps it goes without saying that normally on appeal the whole case is before the appellate tribunal, even though the appellant excepts to only a part of the judgment below. All the facts as developed by the pleadings and evidence are before the appellate court and it may and should exercise its independent judgment on the propriety of granting declaratory relief. And the appellate court has a free hand in granting such judgment as it considers proper, instead of reversing for some minor error."Greater Anchorage Area Borough v. City of Anchorage,504 P.2d 1027, 1036 (Alaska 1972) (quoting E. Borchard, Declaratory Judgments 253-54 (2d ed. 1941)).