# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01510-SCT

*HALEY BARBOUR AND MISSISSIPPI
DEPARTMENT OF CORRECTIONS BY AND ON
BEHALF OF THE STATE OF MISSISSIPPI*

*v.*

*DELTA CORRECTIONAL FACILITY
AUTHORITY AND JIM HOOD, ATTORNEY
GENERAL, STATE OF MISSISSIPPI[1]*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/3/2002 |
| TRIAL JUDGE: | HON. WILLIAM G. WILLARD, JR. |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN L. MAXEY, II |
| | CHRISTINA CARROLL |
| ATTORNEY FOR APPELLEES: | HAROLD EDWARD PIZZETTA, III |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 04/22/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1.    This case involves the interpretation of whether then-Governor Ronnie Musgrove's

veto of a portion of Senate Bill No. 3163 (SB 3163) from the 2002 legislative session, 2002

Miss. Laws ch. 135, amounted to a veto of an appropriation or merely a condition of an

---

[1] In January 2004, during the pendency of this appeal, Haley Barbour succeeded Ronnie
Musgrove as Governor of Mississippi, while Jim Hood succeeded Mike Moore as Attorney General
of Mississippi.  By operation of M.R.A.P. 43(c), Governor Barbour and Attorney General Hood
were automatically substituted as parties in their official capacities in the place of their predecessors
in office.

appropriation. This Court finds that the partial veto was part of a condition and therefore, according to the Mississippi Constitution of 1890 and almost 100 years of case law interpreting our State's Constitution, the Governor's partial veto was unconstitutional and thus a nullity. Also, this Court rejects the invitation or suggestion by counsel in this case to reconsider and overrule our case law. Mississippi has a long history with these issues, and many other sister states have looked to our case law for guidance in their own constitutional interpretations. We find that the principles of our case law are still valid and soundly reasoned and should not be overruled.

¶2. On April 9, 2002, Governor Ronnie Musgrove (the Governor) approved Sections 1 and 2 of SB 3163 which addressed funding for prisons and vetoed Section 3. Following the partial veto, the Speaker of the House of Representatives requested an official opinion from the Attorney General on the partial veto. The Attorney General issued an opinion on April 11, 2002, which characterized the vetoed language as a condition and not an appropriation. Thus, in the opinion of the Attorney General, the Governor's veto of Section 3 was an improper execution of veto powers pursuant to Miss. Const. art. 4 § 73.

¶3. On August 2, 2002, Delta Correctional Facility Authority (Delta) filed a motion for a temporary restraining order (TRO) and a verified complaint in the Chancery Court of Leflore County to enjoin the Mississippi Department of Corrections (MDOC) and the Governor from closing the Delta Correctional Facility. Delta contended that the Governor and MDOC's termination of its contract for private housing of prisoners, was incorrect because the Governor's partial veto was unconstitutional. Delta sought declaratory and

2

injunctive relief to affirm the contract and prohibit MDOC from reducing the number of inmates at the facility.

¶4.    On August 5, 2002, Chancellor William G. Willard, Jr., granted the TRO which required the operation of the prison until such time as a hearing could be conducted on the issues.  On August 22, 2002, the Attorney General intervened, without objection from the parties, to argue the question of constitutional validity of the partial veto.  On August 26, 2002, a one-day trial was conducted.  On September 3, 2002, the chancellor issued a sixteen page written opinion which ruled that the partial veto violated Art. 4, § 73 of the Mississippi Constitution of 1890, relying upon the authority of *State v. Holder*, 76 Miss. 158, 23 So. 643 (1898) and *Fordice v. Byran*, 651 So.2d 998 (Miss. 1995).  Accordingly, the chancellor found that SB 3163 was valid law in its entirety.[2]

¶5.    On September 5, 2002, the Governor and MDOC appealed.  Delta did not appeal in this matter, however, as stated above the Attorney General intervened in the matter, without objection, and has responded with a brief as the appellee to the Governor's and MDOC's appeal in this matter.

## FACTS

¶6.    On October 3, 2001, MDOC and Delta signed a Residential Services Agreement.  Delta was a private prison in Leflore County.  The terms of the agreement included that

---

[2] In addition to ruling that the Governor's partial veto was unconstitutional in this instance, the order also stated that SB 3163 stood as law in its entirety and the appropriation of approximately $251 million with authority to spend approximately $54 million for fiscal year July 1, 2002 through June 30, 2003 remained in effect.  The order also stated that MDOC's termination of the contract with Delta was improper and accordingly remained a binding agreement and in full force and effect. The chancellor, however, denied any other relief sought by Delta.

3

Delta would house inmates at the facility for a two year period from October 3, 2001, to October 3, 2003. The contract stated in part the following:

> Section 2.1 Term. A. The term of this Agreement shall be for two (2) years commencing on October 3, 2001 and ending on October 3, 2003. This Agreement is subject to annual appropriations as set forth in Section 8.6 of this Agreement.
>
> *    *    *    *    *
>
> Section 8.6 Termination Due to Unavailability of Funds. The payment of money by the Department under any provisions hereto is contingent upon the availability of funds appropriated by the Legislature of the State to pay the sums pursuant to this Agreement. In the event funds for this Agreement become unavailable due to non-appropriation, the State shall have the right to terminate this Agreement without penalty or obligation, except for the obligation to pay for services already provided.

On April 1, 2002, the House of Representatives and the Senate in the 2002 Regular Session passed SB 3163. The bill provided for MDOC appropriations for the fiscal year of July 1, 2002 through June 30, 2003. The total amount of appropriations for MDOC was $250,190,746.00 of which no more than $54,726,714.00 could be spent for the funding of private prisons. SB 3163 states in part:

> An Act making an appropriation for the support and maintenance of the Mississippi Department of Corrections and to pay the expenses of counties for holding state prisoners in county jails, for fiscal years 2002 and 2003.
>
> Section 1: The following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the State General Fund not otherwise appropriated, for the support and maintenance of the Mississippi Department of Corrections for the fiscal year beginning July 1, 2002, and ending June 30, 2003......................................................................................$233,734,329.00.
>
> Section 2: The following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the special fund in the State Treasury to the credit of the Mississippi Department of Corrections which is collected by or otherwise become available for the purpose of defraying the expenses

of the Department, for the fiscal year beginning July 1, 2002, and ending June 30, 2003 ..................................................................................$16,456,417.00.

Section 3. Of the funds appropriated under the provisions of Sections 1 and 2, not more than the amounts set forth below shall be expended for the respective major objects or purposes of expenditure:

*    *    *    *

PRIVATE PRISONS

FUNDING

General Funds.........................................................................$54,726,714.00.

Special Funds.......................................................................................0.00.

Total.....................................................................................$54,726,714.00.

*    *    *    *

Any transfers or escalations shall be made in accordance with the terms, conditions and procedures established by law, except that no transfers shall be made which reduce funds allocated in Section 3 to Regional Facilities or Private Prisons.

Thereafter, on April 9, 2002, the Governor approved Sections 1 and 2 of SB 3163, but struck or vetoed a portion of Section 3. The Speaker of the House of Representatives requested an official opinion from the Attorney General on the partial veto. On April 11, 2002, the Attorney General issued his opinion stating in part:

The portions of ...SB 3163 which the governor attempted to partially veto do not provide for the appropriations, but rather set forth the conditions under which the money appropriated elsewhere in the bill may be spent, i.e., for the funding of various divisions and programs of the agency.

*    *    *    *

5

Therefore this office is of the opinion that he governor's action in attempting to veto portions of Section 3 of Senate Bill No. 3163...constitutes an improper exercise of his Section 73 veto powers.

\* \* \* \*

Section I of the Bill makes a separate and distinct appropriation of money from the general fund to the Department of Corrections. Section 2 of the bill makes an additional separate and distinct appropriation of money from special funds to the Department of Corrections. Section 3, on the other hand, does not provide for an appropriation, but rather sets forth the conditions under which the money appropriated by Sections 1 and 2 may be spent...It states "Of the funds appropriated under the provisions of Sections 1 and 2, not more than the amounts set forth below shall be expended for the respective major objects of expenditure."

The opinion effectively concluded that the Governor's veto exceeded his authority pursuant to Section 73 of the Mississippi Constitution. On August 2, 2002, Delta filed this action in the Chancery Court of Leflore County.

## DISCUSSION

I. **Whether provisions of a prison appropriations bill (SB 3163, 2002 Regular Session) allocating a specific amount of money for private prison funding and prohibiting that money from being spent on anything else are "parts" of the appropriations bill that are thereby subject to veto under Section 73 of the Mississippi Constitution of 1890?**

¶7. Prior to addressing the issue of whether the Governor vetoed an actual "appropriation" or a "condition" of an appropriation, a framework of some background information and general case history of similar issues presented and ruled upon by this Court is helpful to resolve the question before us today.

A. **Provisions of the Mississippi Constitution of 1890.**

¶8.     Article 4 of the Mississippi Constitution of 1890, includes § 69 which concerns the

contents of appropriation bills, § 72 which concerns the process of a governor's approval or

denial of a bill and the corresponding legislative veto override process, and § 73 which

concerns a governor's veto power of appropriation bills.  Each of these sections are of

importance in  the general understanding of the case sub judice.  Section 69 states:

> General appropriation bills shall contain only the appropriations to defray the
> ordinary expenses of the executive, legislative, and judicial departments of the
> government; to pay interest on state bonds, and to support the common
> schools. All other appropriations shall be made by separate bills, each
> embracing but one subject. **Legislation shall not be engrafted on the
> appropriation bills, but the same may prescribe the *conditions* on which
> the money may be drawn, and for what *purposes* paid.**

Miss. Const. art. 4, § 69 (emphasis added).  Section 72 states:

> **Every *Bill*** which shall pass both Houses shall be presented to the Governor
> of the state. If he approve, he shall sign it; but if he does not approve, he shall
> return it, with his objections, to the House in which it originated, which shall
> enter the objections at large upon its Journal, and proceed to reconsider it. If
> after such reconsideration two-thirds ( 2/3 ) of that House shall agree to pass
> the Bill, it shall be sent, with the objections, to the other House, by which,
> likewise, it shall be reconsidered; and if approved by two-thirds ( 2/3 ) of that
> House, it shall become a law; but in all such cases the votes of both Houses
> shall be determined by yeas and nays, and the names of the persons voting for
> and against the Bill shall be entered on the Journal of each House respectively.
> If any Bill shall not be returned by the Governor within five (5) days (Sundays
> excepted) after it has been presented to him, it shall become a law in like
> manner as if he had signed it, unless the Legislature, by adjournment,
> prevented its return, in which case such Bill shall be a law unless the Governor
> shall veto it within fifteen (15) days (Sundays excepted) after it is presented
> to him, and such Bill shall be returned to the Legislature, with his objections,
> within three (3) days after the beginning of the next session of the Legislature.

*Id*. § 69 (emphasis added).  Section 73 states:

> The governor may veto parts of any **appropriation bill**, and approve parts of
> the same, and the portions approved shall be law.

*Id*. § 73 (emphasis added).

¶9.     Thus, Section 69 provides that legislation cannot be engrafted on to an appropriation bill, but that the conditions to draw the money and the purpose for which the money will be paid may be prescribed in the appropriation bill. Section 72 provides, in part, for a legislative override of every bill and the legislative override process of a two-thirds (2/3) vote of both Houses to overturn a governor's veto. On the other hand, Section 73 specifically concerns appropriations bills as opposed to "every bill" and does not provide for a legislative override process.

### B.     Prior Case Law

¶10.     This Court has ruled on questions concerning whether an "appropriation" or merely a "condition" of an appropriation was vetoed by a governor in *State v. Holder*, 76 Miss. 643, 23 So. 643 (1898); *Colbert v. State*, 86 Miss. 769, 39 So. 65 (1905); and *Fordice v. Bryant*, 651 So.2d 998 (Miss. 1995).

¶11.     In *State v. Holder*, decided within 8 years of the Mississippi Constitution of 1890, this Court found that a governor could not veto a condition of a bill. *Holder*, 23 So. at 645. Indeed, this Court provided that every bill has three parts which include "[t]he **purpose** of the bill, the **sum** appropriated for the purpose, and the **conditions** upon which the appropriation shall become available." *Holder*, 23 So. at 645 (emphasis added). This Court commented that the result would be "monstrous" if a governor was allowed to make an appropriation into law yet veto either the purpose or conditions, or both, in the process. *Id*. This result would frustrate the legislative intent unless the legislature then passed the purpose

8

or condition by a two-thirds (2/3) vote. *Id*. The ***Holder*** Court also commented on the meaning of § 73:

> The true meaning of section 73 is that an appropriation bill made up of several parts (that is, distinct appropriations), different, separable, each complete without the other, which may be taken from the bill without affecting the others, which may be separated into different parts complete in themselves, may be approved, and become law in accordance with the legislative will, while others of like character may be disapproved, and put before the legislature again, dissociated from the other appropriations.

*Id*. *See also* ***Fordice***, 651 So.2d at 1002. This Court further stated:

> To allow a single bill, entire, inseparable, relating to one thing, containing several provisions, all complementary of each other, and constituting one whole, to be picked to pieces, and some of the pieces approved, and others vetoed, is to divide the indivisible; to make of one, several; to distort and pervert legislative action, and by veto make a two-thirds vote necessary to preserve what a majority passed, allowable as to the entire bill, but inapplicable to a unit composed of divers complementary parts, the whole passed because of each.

***Holder***, 23 So. at 645. *See also* ***Fordice***, 651 So.2d at 1002. Likewise in ***Fordice***, this Court held that then-Governor Fordice impermissibly vetoed a condition prescribed by the legislature on twenty-seven appropriations bills rather than a specific appropriation. ***Id*** at 1002. ***Fordice***, a 1995 case decided almost 100 years after ***Holder***, reiterated the language, reasoning and law in ***Holder***. In ***Colbert***, a case involving bonds rather than appropriations, reinforced the authority that the Legislature holds in Mississippi based upon the Constitution. ***Colbert***, 39 So. at 66. Specifically, the legislative branch of government has "control of the purse strings." ***Id***. This Court further held:

> Indeed, it is the supreme legislative prerogative, indispensable to the independence and integrity of the Legislature, and not to be surrendered or abridged, save by the Constitution itself, without disturbing the balance of the system and endangering the liberties of the people. The right of the Legislature

9

to control the public treasury, to determine the sources from which the public revenues shall be derived and the objects upon which they shall be expended, to dictate the time, the manner, and the means both of their collection and disbursement, is firmly and inexpugnably established in our political system.

*Id*.

### C. The Arguments

¶12.     Both the Governor and the Attorney General outline a general background in which to understand the history of appropriation bills and the veto powers of the legislative and executive branch of government. The Attorney General contends that the Legislature placed a "condition" upon the approximately $251 million appropriated to MDOC. He argues that Section 1 and 2 of SB 3163 appropriate $251 million in general funds ($233,734,329) and special funds ($16,456,417) while Section 3 only caps, and does not appropriate, the private prison spending of not more than approximately $54 million in funds.[3] When looking at SB 3163, an eleven-page document, as a whole, Section 3 in and of itself spans approximately five pages and includes funding for various areas including support, medical services, parole board, farming operations, private prisons, and regional facilities.

¶13.     The Attorney General states that according to case law, there is a bright line test for partial vetoes consisting of (1) a veto of a complete appropriation with a purpose, sum, and conditions, and (2) the partial veto of the item must be distinct and separate and not affect another portion of the bill. ***Fordice***, 651 So.2d at 1002; ***Holder***, 23 So. at 645. The Attorney General maintains that Sections 1 and 2 of the bill appropriate funds by stating in part the

---

[3] SB 3163 also prohibited MDOC from decreasing the private prison funds by 10% to offset any emergency in the MDOC budget. *See* Miss. Code Ann. § 27-104-17(2).

same language that "The following sum, or so much thereof as may be necessary, is hereby appropriated...." *See* SB 3163. On the other hand, Section 3 of the bill begins "Of the funds appropriated under the provisions of Section 1 and 2, not more than...." which the Attorney General maintains is a "condition" placed on the appropriation. Comparing Governor Fordice's attempt to exercise a partial veto by striking a provision that placed a cap on the number of employees of 86 and inserting 84 and Governor Musgrove's striking a provision that placed a cap of not more than $54 million, the Attorney General concludes that the struck item is a condition and not an appropriation.

¶14. Further, the Attorney General contends that the language of Section 3 has none of the indicia of an appropriations because the no more than $54 million cap is not an appropriation of a specific or certain sum of money since MDOC is not required to spend $54 million or any amount of private prisons. The term private prison is not a specific purpose because it is open ended and does not specify any particular prison nor tie the funds to specific expenditure. In addition, the Attorney General maintains that the Governor's contention that the partial veto of Section 3 resulted in no funds for private prisons, since the $251 million was reduced by $54 million, runs afoul of case law that any partial veto must not affect any other non-vetoed portion of a bill. *Fordice*, 651 So.2d at 1002; *Holder*, 23 So. at 645.

¶15. The Governor argues that the chancery court's interpretation of Section 73 weakens the checks and balances of the governmental branches given by the Constitution and dilutes the chief executive officer's decision making power. In addition, the Governor maintains that *Holder* and *Fordice* are not controlling in the case sub judice. The Governor argues that in *Holder*, the vetoed language did not contain a specific amount of money designated for

a specific purpose, but rather "requirements" that had to be satisfied before dispersal of the funds (i.e., conditions). The Governor argues that in *Fordice*, there was no veto of "an actual amount of money allocated for a specific purpose." Here, the Governor contends that the veto was a classic appropriation because the struck provision allocated "a definite maximum amount of money to be spent in a specific purpose, and prohibit[ed] the money from being spent on anything else." That being, $54 million for private prisons and for nothing else.

¶16. Further, the Governor contends that the reasoning used in *Holder* and *Fordice* is based upon a distortion of the language contained in Section 73. Section 73, according to the Governor, states that a governor "may veto **parts** of **any appropriation bill**...." (emphasis added). Thus, the Governor maintains that the attempt by *Holder* and *Fordice* to distinguish a "distinct appropriation" from a "condition" of an appropriation and to allow partial veto of the distinct appropriation only, is unsound. Like Section 69 which addresses the Legislature's ability to prescribe conditions in appropriation bills, the Governor asserts that the framers could have included the term "conditions" in Section 73. However, the Governor argues that Section 73 does not restrict the partial veto of a condition, rather the section allows a partial veto of "parts of any appropriation bill" which includes a "condition" or "appropriation."

### D.    The Chancery Court Ruling

¶17. The chancery court's opinion provided a general history of the Constitution as well as an examination of Sections 69, 72, and 73 and the prior case law of *Holder* and *Fordice*. Based upon evidence, the Constitution and case law, the chancellor determined that the

12

Governor's partial veto of SB 3163, Section 3, was unconstitutional and thus a nullity. According to the chancellor, Sections 1 and 2 reflected appropriations of funds while Section 3 was a condition. The chancellor noted that the Governor did not exercise a partial veto of Sections 1 or 2, however, his veto message made clear that only language in Section 3 were subject to his partial veto. The chancellor ruled in part:

> This language in Section 3 as approved clearly sets forth conditions for the use of the appropriated funds under Sections 1 and 2 and clearly meets the guideline emanating from the *Fordice* and *Holder* decisions...Neither of the provisions "not approved" by the Governor in Section 3 are an entire, separate and distinct appropriation and neither is subject to the partial veto authority granted to a governor under Section 73, Article 4 of the 1890 Constitution as well as *Holder* and *Fordice*.

Comparing other senate bills to SB 3163, the chancellor found that the language in SB 3163 was not unlike these bills in its organization of an appropriation in an initial section of the bill followed by another section that stated "[o]f the funds appropriated [above], not more that the amounts set forth below shall be expended for the respective major objects or purposed of expenditure." This language is similar of course to the language in SB 3163, Section 3. The chancellor also determined that "[t]he attempted partial veto if allowed to stand would effect other parts ot Senate Bill 3163 not vetoed in contradiction of *Fordice* and *Holder*." Lastly, the chancellor also dismissed the issue of whether applying *Fordice* and *Holder* here would practically mean that the Governor would be prohibited from exercising a partial veto to any section of SB 3163. *See* FN 1. In reaching his decision, the chancellor stated that Section 73 was in place to guard against the "evils of omnibus appropriation bills." *Holder*, 23 So. at 644. The chancellor then directed attention to other sections of the bill that could be partially vetoed, namely Sections 16 and 17.

13

### E. Analysis

¶18. As the highest state court, this Court has the proper authority and responsibility to interpret the Mississippi Constitution of 1890. This Court has determined constitutional questions concerning the partial veto powers of a governor in the past in *Holder v. State*, 23 So. 645, and *Fordice v. Bryan*, 651 So.2d 998. The Governor provides case authority from other jurisdictions pertaining to the question of an appropriation verses a condition. While the parties provide worthwhile case authority, we find that the conclusions of other state courts applying their constitutional provisions and case law to specific legal issues are not controlling in Mississippi. The history and evolution of Mississippi constitutional provisions and case law interpretations of those provisions are unique. This Court applied well-reasoned principles to the interpretation of constitutional provisions and subsequent legislation for almost 100 years. This Court finds that these principles and reasoning still stand today.[4]

¶19. The Governor struck a portion of Section 3 of SB 3163, we find that this section was but a condition of Sections 1 and 2 which actually appropriated the funds by the Legislature. The Governor made clear that he exercised a partial veto on only a portion of Section 3 and not any veto on the appropriating Sections 1 or 2. Clearly, Section 69 of the Constitution allows the Legislature to "prescribe the conditions on which the money may be drawn, and for what purposes paid." Miss. Const., Art. 4, § 69. The bill as written, this Court finds,

---

[4] An amicus curiae brief was submitted to this Court on behalf of Senator Hob Bryan. The brief suggests that prior case law is sufficient in deciding this case and that there is no need to consider overruling the prior cases. However, the brief suggests that the pursuant to § 73 "parts" includes line items. Further, the brief argues that a governor may veto a line item if the legislature attempts to tell the executive branch of government exactly how to spend the money.

clearly makes Section 3 "[o]f the funds appropriated under the provisions of Sections 1 and 2, not more than the amounts set forth below..." contingent upon the preceding provisions of Sections 1 and 2 both of which state "[t]he following sum, or so much thereof as may be necessary, is hereby appropriated ...." The language of the bill makes Sections 3 reliant upon Sections 1 and 2 and, in this case, thus, a condition of these sections.

¶20.    Further, this Court finds that the executive branch of government through a governor's use of a partial veto may not thwart or sabotage the legislative intent.  *Holder*, 23 So. at 645.  Indeed, an "executive" or governor in this instance, "in every republican form of government, has only a qualified and destructive legislative function, and never creative legislative power." *Id*.    Thus, we find that the Governor's veto here cannot inhibit the legislative intent of the bill, nor can his veto create new legislation.   Indeed, both *Holder* and *Fordice* warned against allowing a single bill to be picked to pieces resulting in dividing "the indivisible" and frustrating legislative intent. *Id*. *See also Fordice*, 651 So.2d at 1002. Accordingly, this Court finds that the partial veto of SB 3163 exercised by the Governor was an unconstitutional veto of a condition of an appropriation bill as written and thus a nullity. *Holder*, 23 So. 645.

## CONCLUSION

¶21.    For the reasons cited above, this Court finds that the Leflore County Chancery Court correctly found that the Governor's partial veto of SB 3163 was unconstitutional and thus a nullity and that SB 3163 became law in its entirety in the form as passed by the Legislature.  Therefore, the chancery court's judgment is affirmed.

¶22.    **AFFIRMED.**

15

**SMITH, C.J., CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. COBB, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, P.J. DIAZ, J., NOT PARTICIPATING.**

**COBB, PRESIDING JUSTICE, DISSENTING:**

¶23. In my view, a logical reading of the plain language of Art. 4, §§ 73 and 69 of the Mississippi Constitution of 1890 leads to the conclusion that the Governor's veto of the two parts of SB 3163 in question, was lawful and proper. Thus, I respectfully dissent.

¶24. The following steps outline the process by which I reach that conclusion:

A. There is no dispute that SB 3163 is a general appropriation bill.

B. Art. 4, § 73 states "The governor may veto parts of any appropriation bill...."

C. Art. 4, § 69 states (in pertinent part) what general appropriation bills **shall** contain: "[g]eneral appropriation bills shall contain only the appropriations to defray the ordinary expenses of the executive, legislative, and judicial departments of the government." Clearly the MDOC is a department of the executive branch. Clearly SB 3163 is the general appropriation bill for MDOC, providing $233.7 million from the State General Fund and $16.5 million from the MDOC special fund, totalling more than a $250 million appropriation to MDOC.

D. Art. 4, § 69 also states what general appropriate bills **shall not** contain: "[l]egislation shall not be engrafted on the appropriation bills . . . ." The language which in my view violates Section 69 , is found buried in the very last sentence of the five pages which comprise Section 3 of SB 3163, stating "[a]ny transfers or escalations shall be made in accordance with the terms, conditions, and procedures established by law, *except that no*

16

*transfers shall be made which reduce funds allocated in Section 3 to Regional Facilities or Private Prisons."* (emphasis added).  This appears to be a classic case of "engrafting" if ever there was one.

¶25.    In essence this bill, as sent to the Governor, mandated that the MDOC must spend the entire $54,726,714 to fund private prisons in FY 2003.  Period.  That's it.  No matter if there is a serious shortfall of revenue available to fund state government due to inaccurate estimations of expected revenue, forcing a reduction of the total MDOC funding.  No matter whether there are any prisoners that need to be housed in private prisons.  No matter what other emergency or unforeseen contingency might arise within MDOC which would necessitate the transfer of funds to or from other major objects of expenditure within the MDOC appropriation.  As correctly stated in the Governor's veto message of April 9, 2002, "[t]his special restriction on transfer nullifies general law authorizing agency heads to transfer up to 15% of their budget between categories as changes occur and needs demand." This $54.7 million would have to be spent on private prisons, no matter what.

¶26.    It is easy for the casual or complacent reader to overlook this engrafting, however, because the up-front and obvious part of Section 3 of SB 3163 which speaks to funding of private prisons states that "***not more than*** the amounts set forth below shall be expended for the respective major objects or purposes of expenditure," but not until page six does it state that the $54,726,714 must be spent on private prisons.

¶27.    While ***State v. Holder***, 76 Miss. 158, 23 So. 643 (1898) and ***Fordice v. Bryan***, 651 So. 2d 998 (Miss. 1995), cited by the majority, are instructive, they are not controlling in this case, and in my view, it is not necessary to overrule them in order to reverse the trial court's

17

ruling. They are quite distinguishable on their facts. It is unfortunate that both these cases have employed a torturous analysis of the difference in "conditions" and "parts" of appropriations, which might be expected to be applied in every case involving the partial veto of an appropriation bill. That is not, however, necessary in the case before us.

¶28. Section 73 of our Constitution is, in essence, a "check" given to the Governor to prevent legislative micromanagement of executive branch departments, and thus is an integral part of the "checks and balances" ingrained in our constitutional system. See *Alexander v. State ex rel. Allain*, 441 So. 2d 1329 (Miss. 1983). Contrary to the reasoning of the chancellor, which is approved by the majority, in my view Section 73 contemplates that even if an appropriation bill covers "but one subject" as required by Section 69, the Governor may still veto parts of it. If the Legislature tries to tell the executive branch exactly how to spend a sum of money through the use of a line item, the Governor has the right to veto that item. The Governor, however, has to pay a price for the exercise of this power, i.e., unless the veto is overridden, the money will not be spent at all. This Court's established doctrine forbidding the veto of "conditions" means the Governor must veto the "appropriation", and not just change the language as was done in *Fordice*. Otherwise, the Governor would be writing legislation.

¶29. The position taken by the Delta Correctional Facility Authority, and adopted by the chancellor, would render this check on legislative power practically useless. If §§ 1 and 2 of SB 3163 are the only "appropriation" sections, so that a Governor cannot veto a line item in an appropriation bill, then § 73 is essentially written out of the Constitution. It reduces

18

the veto power of the Governor to merely a power to veto the whole bill. That would render § 73 superfluous, because § 72 already provides for vetoes of entire bills.

¶30. On the other hand, the Governor's alternative position, i.e. that a Governor should be able to veto any part of a bill (presumably including individual words and phrases) is untenable. That would allow the Governor to use the veto power to essentially write legislation that the Legislature did not initially approve and that would become law unless there is a successful affirmative two-thirds vote of the Legislature to override the veto.

¶31. The Governor's veto is consistent with *Holder* and *Fordice*. In both those cases, the forbidden vetoes left the appropriation intact but changed certain conditions on its expenditure. For that reason, the vetoes were improper. Here, the money [the line item appropriation to fund private prisons] could not be spent at all [absent an override of the veto], and thus the veto of the line item was a valid exercise of the Governor's power under § 73.

¶32. The Legislature may make a line-item appropriation and, if the Governor disputes it, the Legislature may override his veto by a two-thirds majority. This forces a vote on that line item, and that line item alone, a process which isolates the disputed provision for consideration by itself, free from any political maneuvering which might have previously occurred in drafting the entire bill. These balancing powers would be sufficient to enable the Legislature to maintain control over the power to make law, to tax, and to spend, and at the same time to protect the public against untoward legislative maneuvering and interference with executive powers.

19

¶33.    For the foregoing reasons, I conclude that the Governor's action here was a veto of a "part" of an "appropriation bill" and thus proper under Section 73.  Therefore, I would reverse and render the chancellor's judgment.

**WALLER, P.J., JOINS THIS OPINION.**